# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **KENNETH D. MCGINNIS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09CV00031 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*P. Heith Reynolds, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Amanda R. Reinitz, Assistant Regional Counsel, and Victor J. Pane, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I vacate the final decision of the Commissioner of Social Security (the "Commissioner") and remand for further consideration.

I

The plaintiff, Kenneth McGinnis, filed this action challenging the Commissioner's decision to deny his claim for disability insurance benefits pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-434 (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

McGinnis protectively filed for benefits on February 22, 2007, alleging his disability began September 1, 2006. His claim was denied initially and upon reconsideration. An administrative law judge ("ALJ") held a video hearing on July 23, 2008, in which both McGinnis, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied McGinnis's claim on August 18, 2008. The Commissioner's decision became final when the Social Security Administration's Appeals Council (the "Appeals Council") denied McGinnis's request for review on April 23, 2009. On June 10, 2009, McGinnis filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have fully briefed the issues. The case is now ripe for decision.

II

McGinnis was forty-three-years old at the time of the ALJ's decision, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2009). McGinnis has a limited educational background. He is unable to read or write more than a few words. He did not graduate high school, completing special education courses through the tenth grade. Before the alleged onset of his disability, McGinnis had

worked as a painter, maintenance worker, and warehouse delivery person — all jobs that require medium to heavy exertion.

McGinnis claims his disability is caused by over a dozen debilitating conditions, including diabetes and diabetic neuropathy, back pain, arthritis, hemochromatosis, fatty liver disease, problems reading and understanding, colitis, gastritis, diverticulitis, and chest pain, and he offered medical records to the ALJ to substantiate this claim. But after reviewing the data, the ALJ found that McGinnis suffered from only three impairments that would qualify as severe — diabetes mellitus, degenerative changes of the lumbar spine, and arthritis — and none of them qualified as any of the agency's listed disabilities, either alone or in combination.

Based on these findings, the ALJ held McGinnis had the residual functional capacity to perform light-exertion work (lifting no more than twenty pounds occasionally and up to ten pounds frequently, 20 C.F.R. § 404.1567(b) (2009)) that require only occasional balancing, stooping, kneeling, crouching, crawling, and climbing — but not of ladders, ropes, or scaffolds — and do not involve vibrating surfaces or excessively cold, humid, or wet environments.

During the hearing, the ALJ posited a hypothetical to the VE, asking whether someone with McGinnis's residual functional capacity who was also illiterate would be able to perform any jobs in the regional or national economy. The VE testified

that someone with those limitations would be able to perform the duties of a production worker, janitor or building cleaner, and a dishwasher. According to the VE, there were approximately 19,000 such jobs in the region and over 1,200,000 in the national economy. Relying on this testimony, the ALJ concluded that McGinnis was able to perform work that exists in significant numbers in the national economy and was therefore not disabled.

When requesting that the Appeals Council review the ALJ's decision, McGinnis submitted four medical reports to the Appeals Council that were not previously part of the record. This additional evidence included (1) treatment notes from The Clinic and treating physician Larry G. Mitchell, M.D., dated between June 30, 2007, and October 14, 2008, (2) an October 8, 2008 physical assessment by Dr. Mitchell, (3) a November 11, 2008 psychiatric evaluation by psychiatrist Nasreen R. Dar, M.D., and (4) treatment notes dated between July 7, 2008, and October 7, 2008, from Clinch Valley Urology. The Appeals Council summarily denied McGinnis's request, stating, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence . . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. at 1-2.)

McGinnis claims the Appeals Council erred in this conclusion, arguing that because of the new evidence, the ALJ's decision is no longer supported by substantial evidence. For the reasons detailed below, I agree.

III

The plaintiff bears the burden of proving that he is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry

immediately ceases. *See id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), (e) (2009); *see also Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985). If the claimant can perform work that exists in significant numbers in the national economy, then he does not have a disability. 20 C.F.R. § 404.1566(b) (2009).

This court is charged with evaluating the ALJ's decision, not the Appeals Council's, as "the Appeals Council is not expressly required by the regulations to state its rationale for denying review." *Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999) (citing 20 C.F.R. § 404.970(b) (2009)). I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Most importantly, it is the role of the ALJ, not this court, to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). However, because the Appeals Council considered McGinnis's additional evidence before denying his request, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). "This task is a difficult one, since in essence the court must review the ALJ's decision — deemed the final decision of the Commissioner — in the light of evidence which the ALJ never considered, and thus never evaluated or explained." *Ridings*, 76 F. Supp. 2d at 709. Thus, this court needs to carefully balance its duty to review the entire record with its obligation to abstain from making factual determinations. *See Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005).

Previous courts have navigated this fine-line by limiting the analysis of the additional evidence, focusing the inquiry on the narrow question of whether the new evidence "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Id.* (internal quotation marks and citation omitted). If the evidence does create a conflict, then the case is remanded for the Commissioner to weigh and resolve the conflicting evidence. *Id.*

Here, I find that the additional evidence McGinnis submitted to the Appeals Council does present medical findings contrary to the ALJ's determinations. Most significantly, the treatment notes from The Clinic document that McGinnis was diagnosed with mixed connective tissue disease ("MCTD") sometime prior to July 7, 2008, and with hyperlipidemia as early as January 4, 2008. Because the diagnoses were made before August 18, 2008, they "relate[] to the period on or before the date of the [ALJ's] decision" and therefore may be considered in the disability analysis. *See* 20 C.F.R. § 404.970 (b) (2009) ("the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ's] decision").[1] Nonetheless, there is no evidence that the ALJ was aware that McGinnis had a diagnosis of MCTD or hyperlipidemia.[2]

These disorders could be deemed, alone or in combination with McGinnis's other ailments, severe impairments and could affect the evaluation of McGinnis's

---

[1] Only a few documents of the additional evidence presented to the Appeals Council postdate the ALJ's decision. I find that of those few, the only record that does not relate back to McGinnis's health on or before August 18, 2008, are the lab results of an October 14, 2008 blood test at The Clinic, (R. at 418). The remaining postdated records relate to the proper time period, *see, e.g.*, *infra* notes 3-4, and may be considered when evaluating the ALJ's decision.

[2] McGinnis has not explained why he did not present this evidence to the ALJ at the hearing, which occurred on July 23, 2008. However, because McGinnis did submit the evidence to the Appeals Council, McGinnis was under no obligation to show good cause for his failure to furnish the records to the ALJ. *See Wilkins*, 953 F.2d at 96 n.3.

residual functional capacity. The Clinic's treatment notes show that McGinnis's hyperlipidemia is unable to be controlled effectively by medication because his hemochromatosis limits the types of medications he can take. Although the ALJ previously found that McGinnis's hemochromatosis was not a severe impairment, she never had the opportunity to consider it in combination with hyperlipidemia. The Commissioner is supposed to "evaluate [the claimant's hyperlipidemia] by considering its effects on [the claimant]." 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.00(H)(7) (2009). Therefore, there is a reasonable possibility that this new diagnosis could alter the ALJ's findings.

The diagnosis of MCTD is also material to the ALJ's disability analysis because Dr. Mitchell, who treated McGinnis for approximately two years at The Clinic, performed a physical assessment on October 6, 2008, and found that, due in part to his MCTD, McGinnis's physical abilities were more restricted than the ALJ concluded.[3] Dr. Mitchell opined that McGinnis was only able to carry ten pounds

---

[3] Dr. Mitchell's physical assessment was made approximately two months after the date of the ALJ's decision, but it nonetheless relates to McGinnis's health status prior to August 18, 2008, because McGinnis's health had not materially changed in those two months. The newly submitted records from The Clinic show the evolution of McGinnis's physical condition, and nothing in those treatment notes indicates that between August and October McGinnis's condition worsened. Also, the records show that the MCTD and back pain Dr. Mitchell cited as the causes of McGinnis's physical limitations were diagnosed before August.

occasionally and five pounds frequently. Dr. Mitchell also determined that, based on these conditions, McGinnis could only stand or walk for a total of one hour per eight-hour day and sit for four hours per eight-hour day, could never crawl, and had a limited ability to reach, push, or pull. The ALJ, on the other hand, determined that McGinnis had the residual functional capacity to lift twenty pounds occasionally and up to ten pounds frequently, that he could occasionally crawl, and that he could stand or walk for six out of eight hours and sit for six out of eight hours, and mentioned no reach, push, or pull restrictions.

Dr. Mitchell's opinion is of a heightened importance because no other treating physician evaluated the physical work capabilities of McGinnis. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam) (holding a treating physician is one who observes a claimant's condition over a prolonged period of time). The opinion of a treating physician is generally accorded greater weight by the ALJ than an opinion from a non-treating physician. *See* 20 C.F.R. § 404.1527(d)(2) (2009). Additionally, "a treating physician may properly offer a retrospective opinion on the past extent of an impairment." *Wilkins*, 953 F.2d at 96 (holding it proper to consider the opinion of a treating physician made after the date of the ALJ's decision because the opinion concerned claimant's condition before the decision). Thus, in light of the new evidence of McGinnis's physical impairments, it is proper to remand.

Even if the evidence of new physical impairments were not enough to support a remand, the new records also contain findings about McGinnis's mental and psychological impairments contrary to those of the ALJ. The ALJ found that McGinnis did not suffer from severe depression or anxiety, and there is no evidence that the ALJ considered whether McGinnis suffered from mental retardation, a severe impairment under 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2009). In the newly submitted November 11, 2008 psychiatric evaluation, however, Dr. Dar found that McGinnis suffered from severe neurotic depression and mild mental retardation.[4]

Notably, as far as the records show, no expert other than Dr. Dar evaluated McGinnis for mental retardation, making her findings quite significant. Two psychological experts conducted reviews of McGinnis's medical records to determine if McGinnis had a severe comprehension deficit, but neither expert considered mental retardation as a possible impairment causing the deficit. Dr. Dar's opinion about McGinnis's depression is pertinent too, because she was the only mental health expert

---

[4] Even though Dr. Dar's assessment was made after the ALJ's decision, it relates back to the relevant time period. With regard to the diagnosis of mental retardation, it is not likely that McGinnis's intellect changed in the few months gap between the ALJ's decision and Dr. Dar's examination. Earlier records demonstrate that McGinnis had a consistent history of intellectual difficulties. In grade school, McGinnis attended special education classes most of his tenure and left after the tenth grade. Also, at the administrative hearing, McGinnis was referred to as illiterate because of his drastically limited ability to read and write. The symptoms of the severe neurotic depression had been present well before the ALJ's decision, too — they appeared two years earlier, when McGinnis stopped working.

to examine McGinnis. Generally, the Commissioner gives more weight to the opinions of examining sources than to those of non-examining sources. 20 C.F.R. § 404.1527(d)(1) (2009). Thus, even though two non-examining psychological experts rejected anxiety and depression as possible severe impairments, had the ALJ had the benefit of Dr. Dar's evaluation, she may have come to a different conclusion.

Accordingly, I will remand this case so that the Commissioner has the opportunity to properly weigh the new evidence.

IV

For the foregoing reasons, in light of the new evidence presented to the Appeals Council, I find the ALJ's decision is not based on substantial evidence and the case must be remanded for further administrative proceedings pursuant to 42 U.S.C.A. 405(g) sentence four. An appropriate final judgment will be entered.

DATED: May 4, 2010

/S/ JAMES P. JONES
Chief United States District Judge